613 A.2d 137

**Elizabeth EVANS, Individually and Guardian of Andrea Denise Evans, a minor, and Andrea Denise Evans, in her own right, Individually, Appellants,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted March 4, 1992.

Decided July 22, 1992.

378

Ronald A. Smith, for appellants.

Joan A. Zubras, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

PALLADINO, Judge.

Appellants Elizabeth and Andrea Denise Evans (collectively, Evans) [1] appeal an order of the Court of Common Pleas of Philadelphia County (trial court) which granted summary judgment in favor of Appellee Southeastern Pennsylvania Transportation Authority (SEPTA) because SEPTA has sovereign immunity. We affirm.

The following facts are undisputed by the parties. On December 2, 1985, Andrea Denise Evans was a passenger aboard a SEPTA elevated train when three other female passengers began to harass her. In an effort to avoid additional harassment, Andrea Denise attempted to move from one SEPTA passenger car to another. The three females pursued Andrea Denise, cornered Andrea Denise on the platform between two passenger cars, and physically injured Andrea Denise with their fists and a razor blade.

The Evans commenced an action against SEPTA in which they alleged that Andrea Denise's injuries resulted from SEP-

---

1. Elizabeth Evans is appealing individually and as the natural parent and guardian of minor Andrea Denise Evans.

TA's negligence in failing to maintain the SEPTA train in a reasonably safe manner[2] and in failing to respond to the emergency situation involving Andrea Denise.[3] SEPTA filed an answer and new matter in which it averred sovereign immunity as a bar to its liability. SEPTA filed interrogatories and supplemental interrogatories to which the Evans filed answers. SEPTA also filed a motion for summary judgment in which it reasserted its lack of liability on the ground of sovereign immunity. The trial court entered summary judgment for SEPTA, and the Evans brought the present appeal to the Commonwealth Court of Pennsylvania.

 Our scope of review of the entry of summary judgment is limited to determining whether the trial court committed an error of law or a manifest abuse of discretion. *Peters Township School Authority v. United States Fidelity and Guaranty Co.*, 78 Pa.Commonwealth Ct. 365, 467 A.2d 904 (1983). A grant of summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991).

 A plaintiff seeking to impose liability on a Commonwealth party, such as SEPTA,[4] must establish that a common-law or statutory cause of action exists against the Commonwealth party as a result of a negligent act of the Commonwealth party and that the Commonwealth party's negligent act

2. The Evans contend that Andrea Denise was cornered on the platform between passenger cars because she was unable to open a jammed door on the second car.

3. The Evans contend that another SEPTA passenger witnessed the attack and tried to summon help by using an alarm switch mounted on the SEPTA passenger car, but the SEPTA train did not stop until it reached the next station.

4. SEPTA is a commonwealth agency which may assert the defense of sovereign immunity. *Martz v. Southeastern Pennsylvania Transportation Authority*, 143 Pa.Commonwealth Ct. 25, 598 A.2d 580 (1991); *Chambers v. Southeastern Pennsylvania Transportation Authority*, 128 Pa.Commonwealth Ct. 368, 563 A.2d 603 (1989).

falls within an exception to sovereign immunity enumerated in subsection 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b).

We shall adopt the analytical approach utilized by Judge Doyle in *Hall v. Southeastern Pennsylvania Transportation Authority,* 141 Pa.Commonwealth Ct. 591, 596 A.2d 1153 (1991), and shall assume arguendo that SEPTA breached a duty of care owed to Andrea Denise Evans. Nevertheless, we conclude that the Evans cannot recover from SEPTA because the Evans cannot establish that the injuries sustained by Andrea Denise stemmed from a Commonwealth party's negligent act which falls within a subsection 8522(b) sovereign immunity exception.

The Evans have maintained that liability may be imposed on SEPTA pursuant to the sovereign immunity exception at 42 Pa.C.S. § 8522(b)(1). In pertinent part, subsection 8522(b)(1) provides:

(b) Acts which may impose liability.—The following *acts by a Commonwealth party* may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

(1) Vehicle liability.—The operation of any motor vehicle in the possession or control of a Commonwealth party.

(Emphasis added.)

█ The explicit language of subsection 8522(b) allows the imposition of liability solely for certain enumerated "acts by a Commonwealth party" and thus generally disallows the imposition of liability on the Commonwealth for acts of third parties. Section 8501 of the Judicial Code, 42 Pa.C.S. § 8501, defines a Commonwealth party as a "Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment."

Consequently, the express wording of subsection 8522(b) manifests that the General Assembly has not waived sovereign immunity for harm caused by third parties, i.e., persons and entities not included in the subsection 8501 definition of a Commonwealth party. *Buschman v. Druck,* 139 Pa.Common-

wealth Ct. 182, 590 A.2d 53 (1991); *Southeastern Transportation Authority v. Hussey,* 138 Pa.Commonwealth Ct. 436, 588 A.2d 110 (1991); *Moore v. Department of Justice,* 114 Pa.Commonwealth Ct. 56, 538 A.2d 111 (1988), *appeal dismissed sub nom. Moore v. Reid,* 523 Pa. 418, 567 A.2d 1040 (1990); *Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987); *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987).[5] "[T]his legislative judgment, as evidenced by the language of the statute, is consistent with the general rule that criminal and negligent acts of third parties are superseding causes which absolve the defendant from liability for the harm caused by such third parties." *Moore,* 114 Pa.Commonwealth Ct. at 60, 538 A.2d at 113; *accord Mascaro; Buschman; Hussey.*

■ Because the facts in *Hussey* are very similar to the facts in the present case, we conclude that Judge Smith's analysis in *Hussey* governs the disposition of the present appeal. While standing on a SEPTA subway station platform, Michael Hussey was slashed by a knife or a razor during a confrontation with some passengers who had just alighted from a SEPTA train. Hussey alleged that SEPTA was liable for his injuries under the sovereign immunity exception at subsection 8522(b)(1) (vehicle liability) because the confrontation with his assailants had occurred within the direct sight and hearing of the SEPTA trainman who had failed to keep closed or to close expeditiously the SEPTA train doors in order to prevent the escalation of violence and who had failed

5. In *Chevalier* and *Mascaro,* the Supreme Court of Pennsylvania construed section 8542 of the Judicial Code, 42 Pa.C.S. § 8542, which, in the context of governmental immunity, permits the imposition of liability upon a local agency for injuries caused by "the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties" if the negligent acts fall within an exception to governmental immunity enumerated in subsection 8542(b). Because the language of section 8522 and section 8542 are very similar (for example, the language in both sections excludes liability for acts by third parties), the commonwealth court has repeatedly recognized that the supreme court's analyses in *Chevalier* and *Mascaro* are instructive in interpreting section 8522. In *Hussey,* the commonwealth court specifically relied on the supreme court's decisions in *Chevalier* and *Mascaro* to interpret the vehicle liability exception of subsection 8522(b)(1).

to enlist police assistance for Hussey once the confrontation had begun. Citing *Chevalier* and *Mascaro,* the commonwealth court held that "a Commonwealth party is not subject to liability under the vehicle liability exception to sovereign immunity for the criminal acts of third parties even if they were facilitated by the Commonwealth agency's operation of a vehicle." *Hussey,* 138 Pa.Commonwealth Ct. at 442; 588 A.2d at 113.

In the present case, the undisputed facts clearly reveal that Andrea Denise Evans' injuries stemmed from the attack perpetrated by three female SEPTA passengers. Like the SEPTA passengers' attack on Michael Hussey, the SEPTA passengers' attack on Andrea Denise Evans was a superseding cause which absolved SEPTA of any liability for the harm suffered as a result of the attack. *Buschman; Hussey; Moore; see Chevalier; Mascaro.*

For these reasons, we hold that the trial court properly entered summary judgment in favor of SEPTA. Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, July 22, 1992, the order of the Court of Common Pleas of Philadelphia County in the above-captioned case is hereby affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent.

I agree with the majority that Evans possesses a common law cause of action against SEPTA. 42 Pa.C.S. § 8522(a). Because I would find that SEPTA's negligent acts fall within the vehicle exception to sovereign immunity found in 42 Pa. C.S. § 8522(b), however, I would reverse the trial court's grant of summary judgment.

## THE VEHICLE EXCEPTION

The vehicle exception requires that the injury complained of must have been caused by "the operation of any motor vehi-

cle." Contrary to the real estate exception, which has been construed to require that the real property itself must cause the injury, *see, e.g., Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989), the vehicle exception nowhere requires that the injury be caused by a defect or dangerous condition *of* the vehicle.

We have held that the exception does not apply where the operation of the vehicle did not cause the injury. In *Commonwealth v. Robinson,* 123 Pa.Commonwealth Ct. 401, 554 A.2d 172 (1989), a motorist stopped to assist police at an accident scene. While removing flares from the trunk of the police car, which was parked in the passing lane of an interstate highway, the motorist was struck by another vehicle and suffered injuries. We held that the injuries did not arise from the operation of the police vehicle and found the exception inapplicable.

Our Supreme Court similarly found that an injury incurred while alighting from a parked van was not within the exception. *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988). Justice McDermott, writing for the majority, focused on the "operation" requirement of the exception, and stated that:

> As we have illustrated, to operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle. Thus, according to the common and approved usage of the word 'operation', the van was not in operation at the time of Mrs. Love's accident. Getting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle.

*Id.* at 375, 543 A.2d at 533.[1]

Where the injury is causally related to the operation of a vehicle, however, the exception has been found to apply, even

---

1. We have, however, found that injuries caused by a moving part of a vehicle are sufficient to constitute the "operation" of the vehicle, even if the injury occurs while the vehicle itself is stopped. *Sonnenberg v. Erie Metropolitan Transit Authority,* 137 Pa.Commonwealth Ct. 533, 586 A.2d 1026 (1991).

where the injury was not caused by the vehicle itself. This point was aptly illustrated in *Vogel v. Langer*, 131 Pa.Commonwealth Ct. 236, 569 A.2d 1047 (1990).

This court stated the facts in *Vogel* as follows:

Raymond Butler and his passenger Charles Vogel were travelling in the left southbound lane of Henry Avenue. Also travelling in a southerly direction in the righthand lane of Henry Avenue was a SEPTA bus being driven by James Boone. As Butler proceeded through the intersection, his car collided with a truck driven by Kenneth Langer. Langer had been travelling in an easterly direction on Indian Queen Lane and attempting to make a lefthand turn unto Henry Avenue.

At the time of the accident, the SEPTA bus had been stopped in traffic at the intersection. When Langer attempted the lefthand turn, Boone waved him into the intersection, apparently by a hand signal.

*Id.* at 237–38, 569 A.2d at 1048.

After reviewing relevant caselaw, this court found the vehicle exception applicable, finding that "[t]he operation of a motor vehicle necessarily entails temporary stops," and that the "operation of a motor vehicle entails communication with other drivers." *Id.* at 239, 569 A.2d at 1048.

We have expressly stated that the vehicle need not physically collide with the injured party for liability to attach; rather, that common-law concepts of negligence and proximate causation are to be applied as prerequisites to determining whether an actionable claim has been stated under the exception. *Dickens v. Upper Chichester Township*, 123 Pa.Commonwealth Ct. 226, 553 A.2d 510 (1989).

I would therefore conclude Evans' allegations of a jammed door and/or the failure of the operator to respond to the emergency switch are part and parcel of the operation of a vehicle and, therefore, fall within the vehicle exception. The majority, however, never reaches this question because of its determination that the injury was caused by the criminal acts of a third party.

## LIABILITY FOR CRIMINAL ACTS
## OF THIRD PARTIES

Our Supreme Court has held that immunity has not been waived where the injury is caused by the criminal acts of a third party. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987).

In *Mascaro*, a detainee at a detention center for juvenile criminal offenders escaped and, with an accomplice, brutalized a family. Mr. Mascaro, who had been tied up and forced to witness the rape of his wife and daughter, later committed suicide. In a suit against the City of Philadelphia, which maintained the detention center, our Supreme Court reinstated the order of the trial court granting judgment on the pleadings for the City. Appellants in *Mascaro* attempted to base liability on the real estate exception, alleging that the City's negligent maintenance of the detention center allowed the detainee to escape and perpetrate his acts.

The exact issue decided in *Mascaro* was "whether the real estate exception to the Political Subdivision Tort Claims Act exposes the City and Center to liability coextensive with the liability imposed on private landowners." *Mascaro* at 361, 523 A.2d at 1123.

In answering this question, the court noted that:

[T]he real estate exception imposes a standard of liability on the political subdivision to an extent no greater than that of a private landowner, and ... this duty is to maintain the property safely for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be forseen [sic] to be used.

*Id.* at 361–62, 523 A.2d at 1123.

The court went on to find that while granting immunity to the City would result in a difference from the duties and liabilities of a private landowner, who can be accountable for the foreseeable criminal conduct of others, such a finding was:

[C]onsistent with the general rule that the criminal and negligent acts of third parties are superseding causes which

absolve the original actor ... from liability for the harm caused by such third parties.

*Id.* at 363, 523 A.2d at 1124 (citations omitted).

Although Mascaro was decided under the real estate exception, its rationale has been employed in other factual scenarios.[2] *See Chevalier v. City of Philadelphia,* 516 Pa. 316, 532 A.2d 411 (1987) (no liability for criminal acts of third parties under street lighting exception, 42 Pa.C.S. § 8522(b)(4)). In fact, our Supreme Court has stated that the Legislature has not seen fit to waive liability for the acts of third parties in any of the eight exceptions. *Chevalier,* 516 Pa. at 319, 532 A.2d at 413.[3]

Two recent cases decided by this court have applied the *Mascaro* doctrine to cases involving vehicles. In *Southeastern Pennsylvania Transportation Authority v. Hussey,* 138 Pa.Commonwealth Ct. 436, 588 A.2d 110 (1991), the plaintiff was injured when attacked in a subway station. The assailants exited from a SEPTA train, and the plaintiff in *Hussey* attempted to base liability on allegations that operator was negligent in failing to keep the train doors closed or failing to close them expeditiously to prevent the escalation of violence. Finding the vehicle exception inapplicable, we held that "a Commonwealth party is not subject to liability under the vehicle liability exception to sovereign immunity for the criminal acts of third parties even if they were facilitated by the Commonwealth agency's operation of a vehicle." *Id.* at 442, 588 A.2d at 113.

In *Hall v. Southeastern Pennsylvania Transportation Authority,* 141 Pa.Commonwealth Ct. 591, 596 A.2d 1153 (1991), the plaintiff, while riding in a SEPTA trolley, was injured by

2. At least one member of this court, however, has persuasively stated his view that the *Mascaro* rationale should be restricted to the real estate exception. *See Buschman v. Druck,* 139 Pa.Commonwealth Ct. 182, 590 A.2d 53 (1991) (Byer, J., concurring).

3. Our Supreme Court has since stated that immunity in both *Mascaro* and *Chevalier* was based on the fact that the "actions or omissions underlying the respective claims did not fall within the enumerated exceptions to immunity, ..." *Goryeb v. Department of Public Welfare,* 525 Pa. 70, 75, 575 A.2d 545, 547 (1990).

an egg thrown from outside the vehicle by an unknown third party. Again finding the exception inapplicable, we stated that:

> Although Hall alleges that her injury occurred while the vehicle was in operation, she does not allege that her injuries were *caused* by the movement of the vehicle, or by the movement of part of the vehicle, or by an act that is even normally related to the operation of the vehicle.... The movement of the trolley in this instance was not in any way related to the injury suffered by Hall; the trolley might just as well have been stopped and the same potential for injury existed. Nor was the operation of the trolley or the action of any person integrally related to the operation of the trolley, causally related to the occurrence of the injury.

*Id.* at 596, 596 A.2d at 1156.

Nevertheless, I would not find *Mascaro* applicable here. Justice Papadakos, writing for the majority in *Mascaro*, stated that:

> Acts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit. Acts of *others*, however, are specifically excluded in the general immunity section (42 Pa.C.S. § 8541), and are nowhere discussed in the eight exceptions.

*Mascaro*, 514 Pa. at 362, 523 A.2d at 1124.

A review of the *Mascaro* line of cases reveals that in all of those cases, the alleged negligent act occurred prior to the criminal attack, and therefore merely facilitated, rather than caused the injury. The windows in *Mascaro* and *Hall*, the bad lighting in *Chevalier*, and the alleged negligence in allowing assailants to exit from the train in *Hussey*, did not cause the injuries in those cases. Assuming arguendo, that SEPTA breached its duty to protect its passengers, the same reasoning precludes liability for the initial assault itself, even where the negligence of SEPTA may have facilitated that assault.

Evans, however, alleges that, in addition to the negligence of SEPTA that facilitated the assault, negligent acts *by SEPTA which directly involved the operation of the vehicle, i.e.,* the jammed door and the failure to respond to the emergency switch, caused or substantially contributed to the injury or to its aggravation. These acts did not merely facilitate the attack, which had already begun, but affirmatively contributed to prevent Evans' escape, thereby directly causing or exacerbating the injury. Because the negligence of which Evans complains consists of actions which are integrally related to the operation of the train, and which are causally related to the injury, these allegations are sufficient to bring this case under the vehicle exception. Because Evans alleges independent negligent acts by SEPTA, separate and apart from the negligence that facilitated the criminal attack itself, liability for that portion of the injury which may be found to have been caused by these independent acts is not precluded under *Mascaro.*

Nor can I agree that the criminal attack constitutes a superseding cause. "Superseding cause" is an act of a third party or other force which, by it intervention, prevents the original actor from being liable for harm to another caused by his antecedent conduct. *Klages v. General Ordnance Equipment Corp.,* 240 Pa.Superior Ct. 356, 367 A.2d 304 (1976). Pennsylvania has adopted the test set forth in Section 447 of the Restatement (Second) of Torts to determine when intervening negligence will relieve antecedent negligence. *Grainy v. Campbell,* 493 Pa. 88, 425 A.2d 379 (1981). The problem in this case is that at least one of the negligent acts alleged by Evans, the failure to respond to the emergency alarm, is not *antecedent* negligence, but rather concurrent or subsequent negligence on the part of SEPTA. The criminal acts of Evans' assailants, having begun *prior* to the alleged failure to respond to the alarm, cannot act as a superseding cause to absolve SEPTA of its negligence.

I would conclude that the acts complained of fall within the vehicle exception; that these acts did not merely facilitate but affirmatively caused or exacerbated Evans' injuries, and that

the attack by the assailants cannot constitute a superseding cause absolving SEPTA from liability. Accordingly, I would reverse the trial court.